UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR 29 P 3: 27

U.S. DISTRICT COURT
HARTFORD, CT.

WILLIAM J. HUGHES,

    Plaintiff,

v.

CITY OF STAMFORD,

    Defendant.

No. 3:01CV2325(DJS)

## MEMORANDUM OF DECISION

On December 12, 2001, plaintiff William J. Hughes filed this action alleging that defendant, the City of Stamford, his former employer, discriminated against him on the basis of his race, and retaliated against him for complaining about racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981; discriminated against him on the basis of his age, and committed various state law torts against him. On January 17, 2003, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, the City of Stamford filed a motion for summary judgment. (See Dkt. # 17). For the reasons set forth herein, the defendant's motion is **GRANTED in part and DENIED in part.**

### I. FACTS

Hughes is an African-American man, who resides in Danbury, Connecticut. Hughes began working as a firefighter for the City of Stamford Fire & Rescue Department ("Department") on September 12, 1983, and remained employed in this capacity until November

15, 2001, when his employment was terminated. Beginning in August of 1990 and through June 14, 2000 Hughes held the position of Deputy Fire Marshal. On June 14, 2000, Hughes was demoted to the position of firefighter. Throughout his tenure with the Department, the Chief of the Department was Hughes's ultimate supervisor.

Hughes's termination on November 15, 2001 was the culmination of certain disciplinary actions taken against him. On November 17, 1998, Chief Anthony Milone suspended Hughes for two days without pay. Chief Milone indicated that the reason for the two-day suspension was Hughes's arriving at work at 8:20 a.m. for an 8:00 a.m. shift on October 5, 1998; arriving at work at 8:30 a.m. for an 8:00 a.m. shift on October 6, 1998; and being absent without leave after calling in sick at 8:08 a.m. for an 8:00 a.m. shift on October 21, 1998. Hughes did not file a union grievance or otherwise contest the imposition of the two-day suspension without pay.

On October 1, 1999, Chief Milone suspended Hughes for five days without pay. Chief Milone indicated that the reasons for the five-day suspension were that Hughes was disciplined less than one year ago, that Hughes was tardy on two other occasions for which he had not been disciplined, that Hughes locked inspection records in his own desk rather than placing the records in the proper file in violation of standard operating

procedure, and that Hughes refused to answer telephone calls from the fire marshal's office after he had locked the files in his desk. Hughes filed a grievance challenging this discipline.

Chief Milone also presented charges against Hughes to the Stamford Fire Commission. The charges he faced, in addition to those in Chief Milone's October 1, 1999 letter, were abuse of bereavement leave in June of 2000; non-performance of inspection duties with respect to Hughes's work in June of 1997 on the Marriot construction project; failure to post every item from his daily activities on the Department computer tracking system on two occasions; failing to require the installation of a fire suppression system and failing to advise firefighters of the functional supply line interconnection at Avalon Corners; failing to monitor a response to an order directed at Pilgrim Towers requiring the modification of a sprinkler system; and various episodes of incompetence with respect to the inspection of Cloonan Middle School. Hughes contested these charges, and claims, in essence, that his conduct did not deviate from accepted Department practices.

Just prior to the hearing before the Fire Commission, on June 14, 2000, Hughes and the Department entered into a Last Chance Agreement ("LCA"). The LCA provided that Hughes would accept the five-day suspension, and that the charge of abuse of bereavement leave would be added as an additional ground for this

suspension. Further, Hughes forfeited the right to take eight paid holidays, agreed to be demoted from Deputy Fire Marshal to firefighter, and withdrew his pending grievance. Finally, the LCA provided that "Hughes agrees that any future violation of conduct which he has been suspended for in the past, will subject him to immediate termination. The decision to terminate will not be subject to the grievance and arbitration procedure. The only issue before the arbitrator will be whether or not DFM Hughes committed the conduct for which he has been charged." (Dkt. # 20, Ex. F at 1). Hughes agreed to the terms of the LCA, and the scheduled meeting before the Fire Commission did not take place.

Following the execution of the LCA, on September 21, 2000, Hughes filed a charge of race discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"). On October 10, 2000, Hughes notified the Equal Employment Opportunity Commission of the filing of his CCHRO charge. Hughes alleged that the charges presented to the Fire Commission against him prior to signing the LCA were indicative of race discrimination and retaliation for a prior lawsuit he filed alleging race discrimination, which was resolved by settlement, in 1993. On June 18, 2001, the CCHRO found no reasonable cause to sustain a charge of discrimination.

On November 10, 2001, Hughes did not appear for his scheduled work shift. Captain Hunsberger, Hughes's supervisor,

attempted to contact Hughes during the day on November 10, 2001, but he was not able to speak to Hughes until late in the day. According to Hughes, he was out of town on November 10, 2001 and mistakenly believed that he did not have to report to work that day because it was not a scheduled work day for him. Firefighters in the Department work a "three days on and three days off" schedule. Hughes stated that he believed that the first day he was to report to work was November 11, 2001. On November 15, 2001, after a pre-disciplinary hearing, Chief Robert McGrath terminated Hughes's employment with the Department. Chief McGrath invoked the terms of the June 14, 2000 LCA and stated that the basis for terminating Hughes's employment was failing to appear for a scheduled shift. Hughes's union filed a grievance on his behalf, which was referred to arbitration for a hearing on November 15, 2002. On February 8, 2003, the arbitrator denied the union's grievance.

## II. DISCUSSION

Hughes asserts the following claims: (1) race discrimination; (2) age discrimination; (3) retaliation for protected activity; (4) negligent infliction of emotional distress; and (5) intentional infliction of emotional distress. The basis for Hughes's claims of discrimination are the events leading to the execution of the June 14, 2000 LCA and his November 15, 2001 termination.

A.   STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

B. DISCRIMINATION CLAIMS

1. Jurisdiction

The Department makes two arguments challenging this court's jurisdiction to hear certain claims Hughes now presents. First, the Department argues that certain claims are time-barred because they are based upon events that took place outside the period set forth in the governing statute of limitations. Second, the Department argues that Hughes has not exhausted his administrative remedies with respect to his claim that the Department terminated his employment for discriminatory reasons. Each of the Department's arguments is discussed in turn.

a. Statute of Limitations

The Department argues that this court does not have jurisdiction over Hughes's claims based upon incidents that occurred prior to 300 days before Hughes filed his EEOC charge. Specifically, the Department contends that Hughes may not argue that the charges brought against him in May of 2000 were motivated by discrimination because the incidents giving rise to the charges occurred more than 300 days from the date Hughes filed his EEOC charge.

"A Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" Elmenayer v. ABF Freight

System, Inc., 318 F.3d 130, 133 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-5(e)(1) (2000)).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113.

The court has jurisdiction over Hughes's claims addressing the charges brought against him.  The operative date for the purpose of determining the timeliness of Hughes's EEOC filing is not the date of the incidents described in the Department's charges of misconduct against him, but rather the date the charges were presented against Hughes, which is the unlawful employment practice set forth in the EEOC filing.  The Department presented the multiple charges based upon Hughes's alleged misconduct to the Fire Commission for possible discipline in May of 2000.  Although Hughes's actions giving rise to the charges may have taken place more than 300 days before Hughes filed an EEOC charge, Hughes alleges that the unlawful employment practice was his having to answer to false or exaggerated charges of

misconduct. Because he did not have to answer these charges until May of 2000, which is within the 300-day window prior to Hughes's submitting an EEOC charge, the court has jurisdiction over Hughes's claims with respect to the charges he faced in May of 2000 regardless of when the incidents referenced in the charges actually took place.

b. Failure to Exhaust Administrative Remedies

The Department also argues that this court is without jurisdiction to hear Hughes's claim that his November 15, 2001 termination was the result of illegal discrimination because Hughes never presented this claim to the EEOC. The Department also argues that Hughes never raised age discrimination in his EEOC charge. Hughes filed his EEOC charge on September 21, 2000, and he was not terminated until November 15, 2001. Hughes never amended his original charge or filed a subsequent charge.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." Butts v. City of New York Dept. of Housing Preservation and Development, 990 F.2d 1397, 1401 (2d Cir. 1993). The Court of Appeals for the Second Circuit has "held repeatedly that a complaint alleging employer retaliation against an employee who has opposed discrimination may be considered 'reasonably related' to allegations already

raised with the EEOC." Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993). In these situations, the court is permitted to entertain claims based upon conduct occurring after the conclusion of the EEOC proceedings without the filing of another EEOC charge "based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." Butts, 990 F.2d at 1402.

Here, Hughes's November 15, 2001 termination is reasonably related to the conduct complained of in his EEOC charge and the charge itself. When terminating Hughes's employment, Chief McGrath specifically invoked the June 14, 2000 LCA, which Hughes claims to have entered into as a result of coercion from voluminous false charges levied against him before the Fire Commission. These allegedly false charges are the substance of Hughes's CCHRO and EEOC affidavit. Further, Chief McGrath terminated Hughes less than six months after the dismissal of the CCHRO charge. Therefore, Hughes's termination could fairly be considered a retaliatory act related to the substance of his EEOC charge and the filing of the charge itself.

However, Hughes did not exhaust his remedies with respect to his age discrimination claim, and this court is without jurisdiction to hear it. Hughes's CCHRO and EEOC filings do not reference age as an illegal motivation for the Department's actions. "In determining whether claims are reasonably related,

the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002)). Here, there is nothing in Hughes's EEOC charge that would prompt the EEOC to investigate age discrimination. Hughes did not select age on the charge cover sheet as a factor in the Department's decision to act as Hughes challenges it did. Further, and most significantly, nothing in his affidavit in support of his charge references age discrimination, or conduct indicative of age discrimination. Although race and age discrimination share the same analytical framework under caselaw interpreting Title VII and the ADEA, and a showing of pretext would be required in most cases in order to prove each type of discrimination, there is no conceptual overlap between investigating an age discrimination claim and investigating a race discrimination claim. For example, the pool of potentially similarly situated employees would be different, as would the universe of potentially relevant conduct. As such, Hughes did not provide fair notice to the EEOC to investigate his charge of age discrimination and did not exhaust his administrative remedies with respect to this claim. The court is therefore barred from considering Hughes's age discrimination claim.

## 2. Sufficiency of Evidence

Hughes alleges that the Department discriminated against him on the basis of his race, both by treating him differently than non-African American employees and by retaliating against him for his filing a charge with the EEOC, in violation of Title VII of the Civil Rights Act. The Department contends that the discipline Hughes received was the result of documented performance problems and was not the result of illegal discrimination. Because the Department has not met its burden of demonstrating that there is no material fact to be resolved by the factfinder, the Department's motion must be denied.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof in Title VII cases." Under that framework, a plaintiff alleging a violation of a federal anti-discrimination statute establishes a prima facie case by showing that he or she: (1) was a member of a protected class; (2) was qualified for the position he or she held; (3) suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination. See Schnabel v. Abrahmson, 232 F.3d 83, 87 (2d Cir. 2000); see also Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1985) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she

was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.").

Hughes has established a prima facie case of discrimination. The Department contends that Hughes was not qualified to hold his position, and therefore cannot establish a prima facie case of discrimination. However, since Hughes's burden when attempting to make out a prima facie case is de minimis, see McDonnell Douglas Corp., 411 U.S. at 802, the court cannot find that, as a matter of law, Hughes has failed to establish a prima facie case of discrimination given his eighteen-year tenure with the Department and the circumstances of his termination.

If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997). The Department argues that it terminated Hughes's employment because of a well-documented history of failing to appear for his scheduled work shifts on time. The Department contends that Hughes's failure to arrive to work on time was the impetus for the LCA, and ultimately for his termination pursuant to the LCA.

When, as here, the employer meets its burden of articulating a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove by a preponderance of

the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was discrimination. See id. This burden shifting framework is a mechanism to facilitate resolving the ultimate question in an employment discrimination case, which is whether the evidence offered can reasonably and logically give rise to an inference of discrimination under all of the circumstances. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000); Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

Under Rule 56 of the Federal Rules of Civil Procedure, the Department, as the movant, has the burden of proving that Hughes could not possibly meet his ultimate burden of proving discrimination. Hughes alleges that the Department presented false or exaggerated charges to the Fire Commission in May of 2000, and that these charges were the true impetus for the LCA. The Department does not address these charges in its moving papers. Although the Department's position that it terminated Hughes because of tardiness and absence issues is adequately and consistently set forth in the record, the court cannot evaluate Hughes's arguments in favor of a finding of pretext regarding the substance of the charges brought against him because this information is not in the record. The absence of a discussion regarding these charges is particularly conspicuous because the

charges were the subject of Hughes's CCHRO and EEOC filings. The court simply cannot judge the strength or weakness of Hughes's pretext arguments without examining the charges.

Although Hughes must prove pretext to the factfinder, which is ancillary to his ultimate burden of proving discrimination, the Department, as the moving party, has the burden of proving that there is no issue of material fact with respect to the issue of pretext. The Department has not met this burden. This is not a situation where the movant meets its initial burden of demonstrating no material issue of fact, thereby triggering the non-moving party's burden to produce evidence that there is indeed a material issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 330-31 (1986) (Brennan, J. dissenting) ("The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment. . . . This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. . . . The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production."). Rather, this is a situation where the movant has not met its initial burden, and it is not necessary for the non-moving party to present any evidence.

The Department has not met its burden under Rule 56 of demonstrating that there is no issue of material fact. Whether the charges the Department levied against Hughes in May of 2000 were a pretext for illegal discrimination is a genuine issue of material fact. Given the dearth of information regarding these charges in the record, a trial is necessary to resolve this material issue of fact.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

With respect to intentional infliction of emotional distress claims, the Connecticut Supreme Court has stated that, in order to recover damages on this theory,

> [i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

Peytan v. Ellis, 200 Conn. 243, 253 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community.'" Id. at 210-11 (citing 1 Restatement (Second) of Torts § 46, comment (d) (1965)).

Hughes's allegations do not meet this standard. Hughes's allegations could give rise to liability under the federal anti-discrimination statutes, but could not, as a matter of law, give rise to a claim for intentional infliction of emotional distress. The evidence in the record demonstrates that Hughes had been disciplined by the Department, but does not support the allegation that the Department's employees acted in an extreme and outrageous manner. Therefore, the Department's motion must be granted with respect to this claim..

### D. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The dispositive issue when passing upon the validity of a negligent infliction of emotional distress claim in the employment context is whether the employer's conduct is so egregious that the employer "should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that that distress, if caused, would result in illness or bodily harm." Perodeau v. City of Hartford, et al., 259 Conn. 729, 751 (2002). "An individual making an emotional distress claim must show that, as a result of the employer's conduct, a reasonable person would have suffered emotional distress that might result in illness or bodily harm." Id. at 755 (internal citation omitted). Further, in the employment

context, only conduct occurring during the termination process may give rise to a valid infliction of emotional distress claim. See id. at 762-63. Here, Hughes does not allege that any Department employee acted outrageously during the termination process. As such, he cannot, as a matter of law, prevail on this claim.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (dkt. # 17) is **GRANTED in part** and **DENIED in part**. Specifically, the Department's motion is granted with respect to Hughes's age discrimination, intentional infliction of emotional distress, and negligent infliction of emotional distress claims, and denied with respect to Hughes's race discrimination and retaliation claims. This case is referred to the Honorable Thomas P. Smith, United States Magistrate Judge, for the purpose of conducting a settlement conference in this matter. The parties shall submit a joint trial memorandum on or before **May 14, 2004.**

So ordered this 29th day of March, 2004.

DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE