UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM J HUGHES,  )
    Plaintiff,  )
  vs.  )
   )
   )   Case No.: 3:01 CV 2325 (DJS)
CITY OF STAMFORD  )
    Defendant  )
   )
   )
   )   November 10, 2004
   )
   )

## JOINT TRIAL MEMORANDUM

**TRIAL COUNSEL**

For Plaintiff:

    Charles G. Parks, Jr.
    800 Summer St., Ste 504/506
    Stamford CT 06901
    (203) 359 3860
    (203) 323 7398 fax
    CT 16784
    Cparksjr@aol.com

For Defendant

    James V. Minor CT 06713
    Assistant Corporation Counsel
    888 Washington Blvd
    PO Box 10152
    Stamford, CT 06904
    (203) 977 4087 fax 977-5560
    jminor@ci.stamford.ct.us

**JURISDICTION**

Subject Matter Jurisdiction:

Jurisdiction is specifically conferred on the Court by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §§ 2000e-5(f).

Equitable and other relief is sought under 42 U.S.C. §§ 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

Personal Jurisdiction:

Plaintiff, William J. Hughes is and has been for all relevant time a resident of the State of Connecticut.

Defendant, City of Stamford, is a duly chartered municipality within the State of Connecticut.

**JURY/NON-JURY TRIAL**

The Plaintiff has requested a Jury Trial.

**LENGTH OF TRIAL**

Trial is expected to last 2 to 3 days.

**NATURE OF THE CASE**

- The Plaintiff has alleged that the Defendants discriminated against him in violation of Title VII by causing him to have to answer to false and/or exaggerated charges of misconduct before a disciplinary review panel on May of 2000.
- The Plaintiff has alleged that his termination was retaliatory for the filing of his CCHRO and EEOC complaint,

**STIPULATION OF FACT AND LAW.**

1.    The Plaintiff, William Hughes, was employed by the City of Stamford Fire Department from 1983 until his termination on November 15, 2001.

2.     In 1990, Hughes passed the Deputy Fire Marshal service examination and was promoted to a Deputy Fire Marshal.

3.     On or about June of 2000, Hughes signed a Last Chance Agreement.

4.     On November 15, 2001, Hughes was terminated.


Plaintiff's Contentions

The Plaintiff, William Hughes, was employed by the City of Stamford Fire Department from 1983 until his termination in August of 2002. In 1990, Hughes passed the Deputy Fire Marshall service examination and was promoted to a Deputy Fire Marshall. During Hughes services as Fire Marshall, he was being continuously subjected to accusations of non-performance or malfeasence in his performance. Some of the accusations predate this action and were the subject of prior favorable labor action. On or about May 12th of 2000, Hughes was informed of additional disciplinary charges, alleging non-performance of inspection duties. The new charges dated back a number of years and were to be the subject of a current disciplinary hearing which was to occur within one month of the notice of disciplinary charges, June 14, 2000.

The Plaintiff asserts that the Chief Fire Marshall, deliberately accummulated sufficiently complex allegations of malfeasence so that the Plaintiff would be disadvantaged in disproving each allegation within the time permitted before a hearing review panel. The Chief Fire Marshall's actions were undertaken with the intent of effectuating an unjust termination based in whole or in part on the race of the Plaintiff. As a result of the Chief Fire Marshall's actions, on or about June of 2000, and in light of the severity of the accusation and Hughes' firm belief that he would not be permitted a fair and impartial hearing, Hughes was caused to accept demotion from Deputy Fire Marshall to the position of Fire Fighter under a "Last

Chance Agreement"    As a further consequence, the Plaintiff was terminated argurably violating the terms of the Last Chance Agreement.

The Plaintiff filed a EEOC charge in September of 2000. It is plaintiff's position that the motivation for terminating the Plaintiff was in whole or in part due to the filing of his EEOC charge following his demotion.

### Defendant's Contentions Of The Nature Of The Case

The defendant was suspended twice. The first time he was suspended on 11/17/98 for 2 days, for being tardy on 3 days. The second time he was suspended on 10/1/99 for 5 days, for being tardy twice, and locking inspection records in desk and failing to answer telephone calls despite the requirement that he would be available even when he was off-duty. The Plaintiff withdrew his grievance and accepted this five day suspension, and also accepted loss of 8 days for abuse of bereavement leave, in June 2000. He also agreed to demotion from Deputy Fire Marshall to a Firefighter and to two years probation in a "Last Chance Agreement" dated June 14, 2000.

The Plaintiff claims that he was coerced into signing this "Last Chance Agreement" on June 14, 2000 because of the multiplicity of "exaggerated and false" charges filed against him by his two superiors, Assistant Fire Marshall Charles Spaulding and Fire Marshall Barry Callahan.

The City argues that the May 2000 charges were not false and exaggerated. Specifically, the City claims as follows:

-    Prior to the June 14, 2000 hearing of the Fire Commission, plaintiff and his union representatives had all of the paperwork constituting the May 2000 charges, to wit: a binder filled with pages A-1 to A-209;

- Plaintiff and his counsel and union representatives had ample opportunity to examine the binder and the charges contained in the memos and back-up material.

- Plaintiff had ample opportunity to argue if these charges were "false and exaggerated" before a panel consisiting of neutral, unpaid Fire Commissioners who were unbiased and who could have determined if the charges were in fact serious and based upon fact, or "false and exaggerated".

- Plaintiff chose, with advice of counsel and from the union, to not contest the charges and to sign the "Last Chance Agreement" on June 14, 2000;

- Plaintiff later admitted at a hearing before a neutral arbitrator, Roberta Golick, Esq, who was picked by the City and Plaintiff's union to arbitrate his union grieveance, that he knew what he was signing when he signed the Last Chance Agreement (Transcript of Arbitration hearing, p.54) and that he signed it because there was a "high risk" of termination that he would lose his job if he didn't sign it (Tr. p. 56).

- The binder which was given to Plaintiff amply demonstrates by back-up material that plaintiff was negligent or deficient in performance of his duties.

## LEGAL ISSUES

The principal legal issue is whether the Defendant's action in raising the allegations of malfeasance on the part of the Plaintiff (i.e., the stock-piling of allegation) was intentionally designed to disadvantage the defendant in responding.

Further, the motive behind stockpiling of issues was to effectuate a basis for terminating the Plaintiff because of his race.

Additionally, whether the decision to terminate the Plaintiff was in whole or in part in retaliation because the Plaintiff filed a charge before the Connecticut Commission on Human Rights and Opportunities.

## VOIR DIRE QUESTIONS

- Are you, or are you related to, or a close personal friend, of a municipal official, such as a Fire Marshall or a Firefighter?
- Are you, or is any relation or close friend, a person who has made a claim against a City for discrimination or other problem?
- Have you, or any close friend or relative, ever been suspended, fired or demoted?
- Have you, or any close friend or relative, ever filed a union grievance?
- Have your, or any of your friends or relative, ever worked for a City, State or Federal agency?
- Do you believe that some people hold racially biased views?
- Do you hold any racially biased views?
- Does any member of your family or close friends, to your knowledge, hold racially basis views?
- Do you believe that African Americans or any other minority group are generally less suited to perform some jobs than other jobs?

## LIST OF WITNESSES

### Plaintiff's witness:

Capt. Daniel Hunsberger, who was the union representative at the time of the June 2000 hearing. Mr. Hunsberger will testify as to the circumstances surrounding the June 2000 hearing.

William Hughes, who will testify as to the circumstances surrounding the allegation of malfeasance by defendant.

Plaintiff may call each of Defendant's witnesses as hostile witness.

Defendant's witnesses:

1. Barry Callahan, who as Fire Marshall will testify about the matters contained in his affidavit, dated April 13, 2004 in support of the Supplemental Motion for Summary Judgment.

2. Charles Spaulding, Assistant Fire Marshall, will testify about the matters contained in his affidavit dated April 21, 2004 in support of the Supplemental Motion for Summary Judgment.

3. Chief Robert McGrath will testify about the matters contained in his affidavit dated January 14, 2003 in support of the Motion for Summary Judgment, as well as the matters that are in the Binder prepared by Barry Callahan given to plaintiff in support of the May 2000 charges, as well as the hearing on June 14, 2000, the meeting where he was involved in the Last Chance Agreement, and those matters where he has personal knowledge of the incidents.

4. Felicia Wirzbicki, Human Relations Analyst, will testify about the matters contained in her affidavit dated January 2003, as well as the pay and pension benefits given to the Plaintiff.

5. Former Fire Chief Milone will testify about his role in the discipline of Plaintiff in 1998 and 1999.

6. Cpt Hunsberger will testify about the matters he testified in the arbitration hearing, as well as his role as the Plaintiff's commander when Plaintiff was AWOL in 2001.

**EXHIBITS**

Plaintiff exhibits

Plaintiff's Federal Income Tax Returns show damages

Plaintiff does not intend to introduce any other document as part of its case in chief.

Defendant's exhibits with Plaintiff's Objections and Defendant's Responses

**Def. Ex. 1.** Letter by Chief Milone to Plaintiff dated 11/17/98 ordering a two-day suspension without pay for being tardy on October 5, 1998 ("traffic, arrived @ 0820 hours") and October 6, 1998 ("overslept, arrived @ 0830 hours"), and since Plaintiff was absent without leave on October 21, 1998 ("called on sick leave @ 0808 hours").

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401 and 602 also as unduely prejudicial pursuant to Rule 403.

**Defendant's Response**- The letter is relevant on the grounds that it is a business record supporting the discipline of plaintiff for tardiness and being AWOL. The trial court's memorandum granting partial summary judgment dated 3/29/04 states that "Although the Department's position that it terminated Hughes because of tardiness and absence issues is adequately and consistently set forth in the record, the court cannot evaluate Hughes' arguments in favor of a finding of pretext regarding the

substance of the charges brought against him because this information is not in the record..." (emphasis added; pages 14-15). It is relevant to refute plaintiff's claim that his demotion and termination were based upon false charges of non-performance and racial discrimination. It is relevant to explain why the plaintiff voluntarily signed the Last Chance Agreement in June 2000 withdrawing his grievance of the five day suspension and accepting demotion to firefighter.

**Def Ex. 2-** Letter dated October 1, 1999 from Chief Milone to plaintiff ordering a five-day suspension without pay after having determined that plaintiff locked inspection reports in his desk and left work, in violation of standard operating procedures, and after plaintiff did not return phone calls and pages to his residence even though he was aware it was the Fire Marshal's Office calling.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401 and 602 also as unduely prejudicial pursuant to Rule 403.

**Defendant's Response**- The letter is relevant on the grounds that it is a business record supporting the discipline of plaintiff for insubordination, which is what he agreed to the in the Last Chance Agreement dated June 14, 2000. It is relevant to refute plaintiff's claim that his demotion and termination were based upon false charges of non-performance and racial discrimination.

**Def's Ex. 3-** Memo from DC Conroy to Chief McGrath dated 11/1/01 concerning plaintiff being AWOL from duty and failing to respond to phone calls to determine his status.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401  and 602 also as unduely prejudic ial pursuant to Rule 403.

**Defendant's Response**- The letter is relevant on the grounds that it is a business record supporting the termination of plaintiff for being AWOL, a repetition of prior AWOL in 1998, and a violaton of plaintiff's probation he agreed to in the Last Chance Agreement. The trial court's memorandum granting partial summary judgment states that "Although the Department's position that it terminated Hughes because of tardiness and absence issues is adequately and consistently set forth in the record, the court cannot evaluate Hughes' arguments in favor of a finding of pretext regarding the substance of the charges brought against him because this information is not in the record..." pages 14-15. It is relevant to refute plaintiff's claim that his termination was based upon false and exaggerated charges of non-performance and racial discrimination.

**Def. Ex. 4** Letter dated May 29, 2001, 2 pgs, with "Finding of No Reasonable Cause" by Investigator Gaynor, 8 pgs, dismissing Plaintiff's CHRO complaint which

alleges that his demotion pursuant to the Last Chance Agreement was racially motivated.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401 and 602 also as unduely prejudicial pursuant to Rule 403.

**Response-** The arbitrator's decision, rendered after a hearing and consideration of the evidence, is binding upon the plaintiff since it determines that the cause of his demotion pursuant to the Last Chance Agreement was his own decision to sign the agreement, that it was voluntary, and it was based upon advice of his union representative and his private counsel. See the decision, p. 7, which states that plaintiff's demotion in June 2000 was "voluntary, negotiated with the assistance of his own personal counsel and the assistance of the union's representatives" and "was the direct result of his having entered into an agreement with the respondent."

This is binding upon the plaintiff. It also supports the second Special Defense of administrative collateral estoppel in Plaintiff's answer dated March 2002. *Corey v. Avco-Lycoming Division,* 163 Conn. 309, 307 A.2d 155 (1972), *cert. denied,* 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973) (arbitrator's decision that employer had not discriminated against employee because of her religion precluded employee

from relitigating that issue in administrative proceedings under state Fair Employment Practices Act); <u>Rotert v. Jefferson Federal Savings & Loan Association</u>, 623 F.Supp. 1114, 1118 (D.Conn. 1985) (Former employee, sued employer alleging wrongful discharge from employment in violation of ADEA and state law; arbitrator's decision, made a state superior court decision, affirming denial of unemployment compensation benefits because she voluntarily quit, precludes claim under federal act both on the theory of constructive discharge and discriminatory transfer).

**Def's Ex. 5-** Letter dated 11/15/01 from Chief McGrath to plaintiff terminating him for violation of the Last Chance Agreement by being AWOL (absent without leave for failure to appear) for his assigned shift on 11/10/01.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401  and 602 also as unduely prejudicial pursuant to Rule 403.

**Response-** The letter is relevant on the grounds that it is a business record supporting the termination of plaintiff for being AWOL, a repetition of prior AWOL in 1998, and a violaton of plaintiff's two year probation he agreed to in the Last Chance Agreement. It is relevant to refute plaintiff's claim that his termination was based upon false and exaggerated charges of non-performance and racial discrimination.

**Def's Ex. 6-** . Arbitration Award by Roberta Golick, Esq, 9 pages, dated 2/8/03

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401 and 602 also as unduely prejudicial pursuant to Rule 403.

**Defendant's Response-** The arbitrator's decision, rendered after a hearing and consideration of the evidence, is binding upon the plaintiff since it determines that the cause of his demotion pursuant to the Last Chance Agreement and his termination for violation of the Last Chance Agreement by his failure to appeara for duty and respond to phone calls until after his shift was over.

This is binding upon the plaintiff. It is administrative collateral estoppel. _Corey v. Avco-Lycoming Division,_ 163 Conn. 309, 307 A.2d 155 (1972), _cert. denied,_ 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973) (arbitrator's decision that employer had not discriminated against employee because of her religion precluded employee from relitigating that issue in administrative proceedings under state Fair Employment Practices Act); Rotert v. Jefferson Federal Savings & Loan Association, 623 F.Supp. 1114, 1118 (D.Conn. 1985) (Former employee, sued employer alleging wrongful discharge from employment in violation of ADEA and state law; arbitrator's decision, made a state superior court decision, affirming denial of unemployment

compensation benefits because she voluntarily quit, precludes claim under federal act both on the theory of constructive discharge and discriminatory transfer).

**Def's Ex. 7**- The binder given to Plaintiff and his counsel on May 12, 2000 supporting the charges giving rise to the hearing before the Fire Commission on June 14, 2000.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401  and 602 also as unduly prejudicial pursuant to Rule 403.

**Defendant's Response**- The binder is relevant on the grounds that it contains the charges of Chief Fire Marshal Callahan and Ass't Chief Fire Marshal Spaulding, with the business records supporting the charges of insubordination, misfeasance and nonfeasance in the performance of plaintiff's duties as a fire marshal. It is relevant since plaintiff alleges these charges in his complaint are false, par. 13 to 22, pages 2-5. It is relevant to show the charges are **not** false and they are supported by business records that prove the charges- such as the written policies that plaintiff violated, property inspection logs, portions of building code or fire codes, plaintiff's violation orders, plaintiff's handwritten inspection logs, plaintiff's daily activity logs, plaintiff's computer entries for inspections that he performed, orders that were given plaintiff, prior discipline in June 1999 for failure to obey policies, and so on. Attached hereto is the affidavit of

Barry Callahan submitted as part of the Supplemental Motion for Summary Judgment dated April 13, 2004 that state in detail the business records that support the charges against plaintiff. It is relevant since plaintiff agreed in Ex. 2, with advice of his union and private counsel, to amend the charges that he agreed to accept punishment for, that he was charged with insubordination.

Also, the binder is relevant for the proof that plaintiff was insubordinate since they contain business records of orders to him by his superiors that he did not obey.

**Def. Ex. 8.** The Last Chance Agreement dated June 14, 2000.

**Objection** on the basis of Hearsay pursuant to Fed.R.Evid 802 to the extent that the document is offered to prove the truth of matters asserted therein and inadmissible opinion and relevance pursuant to Rule 401 and 602 also as unduely prejudicial pursuant to Rule 403.

**Defendant's response**- Plaintiff's complaint alleges that this 2 page, Last Chance Agreement that plaintiff signed, to withdraw his pending grrievance, was "coerced"- see his complaint, par. 22. This agreement is relevant since it shows that Plaintiff agreed to the withdrawal of his grievance of the five day suspension for being late or AWOL; that he agreed to accept additional punishment for abuse of bereavement leave in June 2000; and, that he agreed to the addition of charges of insubordination from the May 2000 binder of charges and to accept a demotion from fire marshal to firefighter. This agreement is relevant since plaintiff's agreement was based upon having

FROM :THE ADVOCATES LAW GROUP          FAX NO. :2033359007          Nov. 12 2004 03:26PM P15

over four weeks (from May 12 to June 14, 2000) to examine the charges; his union representative and private counsel advised him to accept the "plea bargain"; the agreement was drafted in part by his union representative, and it was signed by plaintiff. No racial motivation can reasonably be ascribed to defendant's adherence to an agreement which the plaintiff signed. <u>This agreement is the basis for the first special defense of accord and satisfaction in Defendant's Answer and Special Defenses dated March 4, 2002.</u>

**Def. Ex. 9** Pay records and agreement concerning the plaintiff's pension from the City of Stamford, to include the 10/21/03 agreement signed by Labor Negotiator William Stover with plaintiff's union, which plaintiff signed on 11/5/03, allowing plaintiff to draw a pension effective 9/12/03, amounting to $2,229.89 a month.

No Objection


**DEPOSITION TESTIMONY**

The Plaintiff does not intend to introduce any deposition testimony.

**JOINT OPENING STATEMENT**

The Plaintiff in the matter before you is William Hughes. He has alleged discrimination and retaliation on the part of the Defendant, City of Stamford. Mr. Hughes, was employed by the City of Stamford's Fire Department from 1983 until his termination in August of 2002. Since 1990, Hughes has served in the capacity of a Deputy Fire Marshall.

On May 12th of 2000, Hughes was informed of a number of disciplinary charges, alleging that he had not performed a series of inspections and alleged other related job issues. Hughes is asserting that he had performed all of the elements of his job properly and in accordance with State, Federal and Local requirements. Hughes asserts that the alleged charges of nonperformance and misperformance raised by the city are without basis and that the real reason for there being so many allegations alleged at one time was to assure that Hughes would be unable to properly address each of the allegations. Hughes further asserts that the only reason for seeking discipline against him was because of his race.

The Defendant argues that the May 2000 charges were not false or exaggerated. The city alleges that Hughes would have had a fair opportunity to address the allegations at a hearing before the Fire Commission. The City alleges that when Hughes signed the Last Chance Agreement, he did so with the advice of his private attorney and union representation, and that he was not coerced into the Last Chance Agreement.

In this law suit, Hughes also alleges that the City retaliated against him, by terminating his employment, for filing a claim before the Connecticut Commission on Human Rights and Opportunities. The Defendant disputes this allegation and maintains that Hughes' termination was in accordance with the Last Chance Agreement reached between Hughes and the City.

## PROPOSED JURY INSTRUCTIONS

### Plaintiff's Proposed Jury Instructions

### Discrimination

It is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, or national origin.

Title VII of the Civil Rights Act of 1964, as amended, § 703(a) (1), 42 U.S.C. § 2000e-2(a) (1) (1997).

In order for the plaintiff to show an unlawful employment practice, the plaintiff may prove that his termination was "because of" his race by showing that his race played a motivating role in, or contributed to, the employer's decision.
Plaintiff may prove that his race was a motivating factor through presentation of either "direct" or "circumstantial" evidence.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Proof of discriminatory intent is critical in this case. Discrimination is intentional if it is done voluntarily, deliberately, and willfully. Discriminatory intent may be proved either by direct evidence, such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. Thus, in making a determination as to whether there was intentional discrimination in this case, you may consider any statement made or act done or omitted by a person whose intent is in issue as well as all other facts and circumstances that indicate his or her state of mind. You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. In order to prevail on his claim, Plaintiff must show that he was qualified for the position Deputy Fire Marshall, that he performed the duties of Deputy Fire Marshall to the usual and custumary standards of other Deputy Fire Marshall's within the Stamford Fire Department, and that his race was a motivating factor in the decision to subject the Plaintiff to disciplinary action in May 2000. Remember that

Plaintiff must show only that race was a motivating factor in Defendant's decision to subject the Plaintiff to the disciplinary hearing in May of 2000. He does not have to show that it was the only or even a major factor in Defendant's decision. If Defendant has offered a non-discriminatory reason or reasons for its decision to subject to disciplinary action in May of 2000 leading to termination in August of 2002 and you believe that reason or reasons, then your verdict should be for Defendant. If, however, you do not believe that this reason or reasons were the real reason or reasons for subjecting the plaintiff to the disciplinary hearing in May of 2002, you may find that Plaintiff has proven his claim of intentional employment discrimination, particularly if you believe that Defendant's representatives did not put forth honestly the reason or reasons for their decision.

> *Standing Orders, Jury Instructions - Title VII Discrimination,* Magistrate Judge John M. Facciola, United States District Court for the District of Columbia.

A showing that the Defendant's representations put forth were not honestly the reason for their decision is referred to a pretext. Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's proffered reasons for its actions that a reasonable person could rationally find them unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reasons.

> *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000).

### Retaliation

I will now instruct you in the law applicable to Plaintiff's Title VII retaliation claim asserted against Defendant.

Plaintiff claims that Defendant retaliated against him by terminating him because Plaintiff had previously pursued a discrimination complaint before the Connecticut Commission on Civil Rights and Opportunities. It is your responsibility to decide whether Plaintiff has proven his claim of retaliation against Defendant by a preponderance of the evidence.

As relevant to Plaintiff's claim, Title VII provides that:

It shall be an unlawful employment practice for an employer to discriminate against [an employee]....because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (2002).

### Damages

I will now give you instructions about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think that you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Plaintiff on his claim against Defendant. The fact that I do does not in any way mean that I think you should award any damages; that is entirely for you to decide. If you find for Plaintiff on his claim that Defendant discriminated against him

because of his race, then you must determine whether he/she is entitled to damages in an amount that is fair compensation. You may award compensatory damages only for injuries that Plaintiff proved were caused by Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation, no more and no less. You may award compensatory damages for emotional pain and suffering, inconvenience, and mental anguish if you find that they were caused by Defendant's discrimination. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. There is no exact standard for fixing the compensation to be determined for these elements of damage. Any award you make should be fair in light of the evidence produced at trial. In determining the amount of damages, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of his/her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. You may not consider the amount of lost wages or other benefits, if any, claimed by Plaintiff in this case. Likewise, you may not consider the cost to Plaintiff of hiring an attorney. Those attorneys' fees and lost wages are determined by the court, if necessary, and may not be included in your damages award.

> *Standing Orders, Jury Instructions - Title VII*
> *Discrimination,* Magistrate Judge John M. Facciola,
> United States District Court for the District of
> Columbia.

If you find that Defendant engaged in intentional discrimination against Plaintiff, backpay liability under Title VII begins no earlier than two years before Plaintiff filed his charge with the Equal Employment Opportunity Commission.

> Title VII of the Civil Rights Act of 1964, as amended, § 706(g) (1), 42 U.S.C. § 2000e-5(g) (1) (1998); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir. 1991).

If you find that Defendant has intentionally engaged in or is intentionally engaging in an unlawful employment practice under Title VII, you may award backpay, payable by the employer responsible for the unlawful employment practice.

In addition, if you find intentional discrimination by Defendant, you may award compensatory and punitive damages to Plaintiff.

> Title VII of the Civil Rights Act of 1964, as amended, § 706(g) (1), 42 U.S.C. § 2000e-5(g) (1) (1998); Civil Rights Act of 1991, § 1977A, 42 U.S.C. § 1981a (1998).

## Defendant's Request For Instructions

The Defendant City of Stamford requests the standard charges on burden of proof, types of evidence, etc. but requests the following charges that apply to this case. Defendants reserves the right to supplement this Request to Charge depending upon what occurs at trial.

1. If you find that Plaintiff signed the Last Chance Agreement voluntarily, with advice of counsel and his union, and he was not coerced, then you must find for the Defendant.

2.  If you find that Defendant has proved that the May 2000 charges were not false or exaggerated, and that they were based in fact, then you must find for the Defendant.

3.  If you find that the Plaintiff has not proved that either the Fire Marshall or the Assistant Fire Marshall presented the May 2000 charges against the Plaintiff because of racial discrimination, then you must find for the Defendant City of Stamford.

4.  If you find that the Plaintiff is entitled to a verdict in accordance with these instructions, but do not find that the Plaintiff has sustained actual damages, then you may return a verdict for the Plaintiff in some nominal sum such as one dollar.    3 Devitt, Blackmar and Wolff, <u>Federal Jury Practice and Instructions</u>, 985.18 (modified).

5.      Should you find that any of the Plaintiff is entitled to recovery and an award of damages, you are instructed that as a matter of law, Plaintiff may recover only once for the violation of his constitutional rights. Plaintiff has a remedy in the form of damages for actual injuries suffered by reason of a violation of a Plaintiff's civil rights, it follows that damages for those same injuries cannot be the basis for a second award under a different theory of law. <u>Virgo v Lyons</u> 209 Conn. 497 (1988).

6.  The Plaintiff is not entitled to recover punitive damages against the Defendant.   42 U.S.C. Sec. 1981a(b)(1); *Newport v. Facts Concert, Inc.*, 453 US 347, 101 S.Ct. 2748, 69 L.Ed.2d616, 634-35 (1981).

7.  The fact that I have instructed you as to the proper measure of damages should not be considered as intimidating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance, in the event you should find in favor of the Plaintiff from a preponderance of the evidence in the case in accordance with other instructions.

3 Devitt, Blackmar and Wolff, <u>Federal Jury Practice and Instruction</u>, @74.02 (modified).

## ANTICIPATED EVIDENTIARY PROBLEMS

The Plaintiff anticipates an evidentiary problem with respect to all of the Defendant's exhibits on the basis of hearsay and/or relevance evidentary basis.

## FURTHER PROCEEDINGS

Should the Plaintiff prevail, counsel would anticipate a further hearing on attorney's fees.

Plaintiff

By _____    Date: <u>November  , 2004</u>
Charles G. Parks, Jr.
The Advocate Law Group, LLC
800 Summer Street, Suite 504
Stamford, CT 06901
(203) 359-3860  Fax (203) 323-7398

Defendant

By _____    Date: <u>November 2004</u>
James V. Minor #CT06713
Assistant Corporation Counsel
888 Washington Boulevard, Box 10152
Stamford, CT  06904-2152
(203) 977-4087 fax 203-977-5560